IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| JOSE ANTONIO GONCALVES : | |
| : | CIVIL ACTION NO.: 21-04631-CDJ |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| AJC CONSTRUCTION INC., *et al.* : | |
| : | |
| Defendants. : | |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT**

On October 21, 2021, Plaintiff Jose Antonio Goncalves ("Plaintiff") filed this lawsuit against Defendants AJC Construction Inc. and Antonio Coelho (collectively, "Defendants") (together with Plaintiff, the "Parties"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.* In his Complaint, Plaintiff alleged, *inter alia,* that Defendants misclassified him as "exempt" within the meaning of the FLSA and PMWA, resulting in the denial of overtime compensation. See Compl., ECF No. 1, ¶¶ 17-49.

Shortly after the Complaint was filed, the Parties began engaging in discussions regarding the allegations in the Complaint, Defendants' potential defenses thereto, and the possibility of settlement. On December 20, 2021, Defendants filed an Answer to the Complaint, Thereafter, the Parties engaged in extensive, arms-length settlement negotiations, which included detailed discussions of the merits of Plaintiff's claims and Defendants' anticipated defenses thereto, as well as the extent of Plaintiff's claimed damages. Among other things, Defendants vigorously disputed Plaintiff's account of the number of overtime hours he worked, his eligibility for overtime compensation, and the likelihood of an award of liquidated damages or the

application of a three (3) year "willful violation" lookback period under the FLSA, in the event of a finding in Plaintiff's favor. Ultimately, the Parties reached the settlement in principle detailed in the attached Settlement Agreement and Release, a true and correct copy of which is attached hereto as Exhibit "A."

Although the Third Circuit has yet to address the question of whether wage claims under the FLSA may be settled without court approval, "district courts within the Circuit have followed the approached endorsed by a majority of courts and assumed that judicial approval is necessary." See Lyons v. Gerhad's, Inc., 2015 U.S. Dist. LEXIS 92348, at *6 n.1 (E.D. Pa. July 15, 2015); see also Gabrielyan v. S.O. Rose Apartments, LLC, 2015 U.S. Dist. LEXIS 135615, at *2-4 (D.N.J. Oct. 5, 2015). Accordingly, Plaintiff respectfully submits this Memorandum of Law in support of Plaintiff's Unopposed Motion for Approval of Settlement.

When considering whether to approve a proposed settlement of an FLSA wage claim, a district court must determine that: (1) the settlement resolves a bona fide dispute over FLSA provisions; (2) the settlement is fair and reasonable to the Plaintiff-employee; and (3) the settlement does not frustrate implementation of the FLSA in the workplace. See Gabrielyan, 2015 U.S. Dist. LEXIS 135615, at *4-5; see also Lyons, 2015 U.S. Dist. LEXIS 92348, at *8; Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1355 (11th Cir. 1982).

As discussed below, the proposed Settlement Agreement clearly satisfies these requirements and, as such, the Court should approve the parties' Settlement Agreement.

### A. The Settlement Resolves a Bona Fide Dispute under the FLSA

When considering whether a proposed settlement agreement resolves a bona fide dispute under the FLSA, district courts look to see whether the agreement "'reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually

in dispute' and is not a 'mere waiver of statutory rights brought about by an employer's overreaching.'" See McGee v. Ann's Choice, Inc., 2014 U.S. Dist. LEXIS 75840, at *4-5 (E.D. Pa. June 4, 2014) (citing Lynn's Food Stores, 679 F.2d at 1355). In order to make this determination, the court must be provided with "a description of 'the nature of the dispute (for example, a disagreement over coverage, exemption, or computation of hours worked or rate of pay) resolved by the compromise.'" See Brumley v. Camin Cargo Control, Inc., 2012 U.S. Dist. LEXIS 40599, at *18 (D.N.J. 2012) (citing Dees v. Hydradry, Inc., 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010)).

As evidenced by the pleadings, this lawsuit involves a bona fide dispute regarding both liability and damages under the Fair Labor Standards Act, including, but not limited to: (a) whether Plaintiff's job duties qualified him for one or more exemptions from overtime compensation; (b) the number of overtime hours worked by Plaintiff; (c) the extent of Defendants' knowledge of the overtime hours Plaintiff worked; (d) Plaintiff's entitlement to liquidated damages on any amounts owed to him under the FLSA; and (e) the applicability of a three (3) year, "willful violation" statute of limitations under the FLSA. See Compl., ¶¶ 17-49; Answer, ¶¶ 17-49.

Accordingly, the proposed Settlement Agreement in this matter clearly resolves a bona fide dispute over FLSA provisions. See Gabrielyan, 2015 U.S. Dist. LEXIS 135615, at *4-5.

**B.     The Settlement Is Fair and Reasonable to the Plaintiff-Employee**

As Judge Robreno recently explained, the Court should consider the total settlement amount, including attorneys' fees and costs, when considering whether the settlement is fair and reasonable to the Plaintiff. Solkoff v. Pa. State Univ., 435 F. Supp. 3d 646, 655 (E.D. Pa. 2020); see also Evans v. Jeff D., 475 U.S. 717, 731-32 (1986), *superseded by statute on other grounds,*

(noting that attorneys' fees do not belong to the attorney but are instead part of the plaintiff's "arsenal of remedies").  Under the proposed Settlement Agreement, in the estimate of Plaintiff's counsel, Plaintiff stands to receive **one hundred percent (100%)** of the unpaid overtime compensation **and one hundred percent (100%)** of the liquidated damages on that amount he could reasonably expect to prove at trial under the FLSA.[1]  ***Even after attorneys' fees and costs,*** Plaintiff still stands to receive one hundred percent (100%) of his potential overtime compensation and sixty-four percent (64%) of his potential liquidated damages under the FLSA.  This result is considerable in light of the risks Plaintiff faced in establishing liability and damages in this case.  While Plaintiff's counsel believes Plaintiff's claims to be meritorious, Plaintiff's counsel is experienced and realistic, and understands the risks involved with establishing the fact of Plaintiff's misclassification and proving the number of overtime hours worked by Plaintiff in the absence of accurate time records, as well as Plaintiff's entitlement to liquidated damages under the FLSA.

Moreover, even if Plaintiff's recovery under the Settlement Agreement were to amount to less than his maximum possible recovery under the FLSA, '[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." Officers for Justice v. Civil Service Comm'n, 688 F.2d 615, 628 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983); see also City of Detroit v. Grinnell

---

[1] Because Plaintiff was purportedly paid on a salary basis for all hours worked, Defendants would likely be entitled to use the "fluctuating workweek method" for calculating overtime compensation owed to misclassified salaried employees under the FLSA. See 29 CFR § 778.114.  Accordingly, Plaintiff would be owed an overtime premium of one half his "regular rate" for all overtime hours worked during the Relevant Time Period.  Assuming he worked fifty (50) hours per week, Plaintiff estimates he would be entitled to recover approximately $205 per week in unpaid overtime compensation (determined by dividing Plaintiff's average weekly salaries in 2019, 2020, and 2021 by 50 to obtain Plaintiff's average "regular rate" of $41.05, dividing the same by 2 to obtain Plaintiff's overtime premium rate under the FLSA of $20.52, and multiplying the same by 10 overtime hours per week [10 OT hours/week x $20.52/OT hour = $205.20/week]), during the approximately eighty-seven (87) weeks he worked for Defendants between October 21, 2019 (two years prior to when the complaint was filed) and his separation on June 30, 2021, resulting in a total of $17,543.23 in overtime compensation under the FLSA.

Corp., 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("there is no reason at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); Lazy Oil Co., 95 F. Supp. 2d at 318 (settling defendant's ability to pay greater amounts was outweighed by the risk that the plaintiffs would not be able to achieve any greater recovery at trial).

Furthermore, the attorneys' fees and costs which Plaintiff's counsel stands to receive under the proposed Settlement Agreement – which amount to approximately thirty-six percent (36%) of the total Settlement Amount – are fair, reasonable, and consistent with the contingent fee agreement entered into by Plaintiff at the onset of this litigation, which provided for the reimbursement of costs advanced by Plaintiff's counsel.

Notwithstanding the above, a Lodestar cross-check reveals the reasonableness of the award of fees to Plaintiff's counsel. In this regard, the Lodestar in this case is $6,761.40. See Declaration of Michael Groh, attached hereto as Exhibit "B." The Lodestar was calculated by multiplying the total number of hours counsel worked on this matter (i.e. 22.92) by the following reasonable rate:

| Name | Title | Total Hours | Hourly Rate | Total Fees |
|---|---|---|---|---|
| Michael Groh, Esq. | Associate Attorney | 22.92 | $295.00 | $6,761.40 |
| **FIRM TOTALS** | | **22.92** | | **$6,761.40** |

The multiplier in this case (i.e. Lodestar cross-check), taking into account all hours expended by Plaintiff's counsel in the litigation, is therefore **2.39** ($16,152.00/$6,761.40 = 2.388). This amount is consistent with the award of attorneys' fees in FLSA common fund cases in the Third Circuit. See Mabry v. Hildebrandt, 2015 U.S. Dist. LEXIS 112137, at *9 (E.D. Pa. Aug. 24, 2015) ("In this Circuit, the percentage of recovery award in FLSA common fund cases

ranges from roughly 20-45%.") (collecting cases); see also Krell v. Prudential Ins. Co. of Am.(in Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions), 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (quoting 3 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 14.03, at 14-15 (3d ed. 1992)).

Accordingly, the Settlement is clearly fair and reasonable to the Plaintiff.

### C. The Agreement Does Not Frustrate the Implementation of the FLSA in the Workplace

Finally, the Court should approve the Settlement Agreement because it is a reasonable resolution for Plaintiff and does not frustrate the implementation of the FLSA in the workplace. As a preliminary matter, the Settlement Agreement embodies the Parties' agreement, upon substantial investigation and arms' length negotiations, being adequately represented by counsel, to resolve all of Plaintiff's wage and hour claims against Defendants. Moreover, while the Settlement Agreement does contain a limited confidentiality provision prohibiting voluntary public disclosure by Plaintiff of the settlement terms, it does not prevent him from responding to inquiries from current or former employees regarding the settlement. Moreover, a copy of the Settlement Agreement is being filed on the public docket in recognition of the "strong presumption [that] FLSA settlements should be available for public view." See Lyons v. Gerhard's Inc., 2015 WL 4378514, *3 (E.D. Pa July 16, 2015).

Furthermore, the Settlement Agreement does not provide for a general release of Plaintiff's non-wage related claims, one common basis for denying approval to settlements under the FLSA. See, e.g., Howard v. Phila. Housing Auth., 197 F. Supp. 3d 773, 779 (E.D. Pa. 2016). Accordingly, the release of claims contained in the Settlement Agreement does not represent

6

employer overreach, but rather "the fair result of a balanced negotiation, in which Plaintiff [] [was] represented by able counsel." Id.

In sum, because the Settlement Agreement represents a fair and reasonable resolution of a bona fide dispute over FLSA provisions without frustrating the purposes of the FLSA, the Court should approve Plaintiff's Unopposed Motion for Approval of Settlement. See Mabry v. Hildebrandt, 2015 U.S. Dist. LEXIS 112137, at *5 (E.D. Pa. Aug. 24, 2015) (noting that, absent impermissible confidentiality clause, settlement would not frustrate the purposes of the FLSA where settlement agreement provided due compensation for alleged unpaid overtime work and resolution of the claims via trial would be expensive and difficult for plaintiff due to Defendants' continued denial of liability).

Accordingly, Plaintiff respectfully requests that the Court find the Settlement Agreement reached between the Parties represents a fair, reasonable, and adequate resolution of Plaintiff's claims against Defendants under the FLSA, and enter an order, substantially in the form attached hereto as Exhibit "C," approving the Settlement Agreement.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By: */s/ Michael Groh*
Michael Murphy, Esq.
Michael Groh, Esq.
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-0210
murphy@phillyemploymentlawyer.com
mgroh@phillyemploymentlawyer.com
*Attorneys for Plaintiff*

Dated: March 29, 2022